MODIFIED OPINION

IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 104,666

STATE OF KANSAS,
*Appellee*,

v.

JAMES R. ANDREW,
*Appellant*.

SYLLABUS BY THE COURT

1.

A trial judge does not err by using PIK Crim. 4th 52.210 (Use of Force in Defense of a Dwelling, Place of Work, or Occupied Vehicle) as part of the jury instructions, even if an alleged victim rather than the defendant is the one who used force in defense of a dwelling. A statement to the contrary in *State v. Alexander*, 268 Kan. 610, 1 P.3d 875 (2000), is disapproved.

2.

Even if lawful force is used to defend a dwelling, an individual responding to that force may act in self-defense if he or she reasonably believes the force is unlawful. Thus, the two defenses of self-defense and defense of a dwelling are not mutually exclusive, and a trial judge errs in instructing a jury that they are.

3.

Under the facts of this case, the defendant's use of force was not objectively reasonable because he entered a dwelling without permission and was made aware that a resident of the dwelling objected to his presence and was defending the dwelling.

1

Review of the judgment of the Court of Appeals in an unpublished decision filed December 23, 2011. Appeal from Johnson District Court; JOHN P. BENNETT, judge. Original opinion filed August 29, 2014. Modified opinion filed December 9, 2014. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Meryl Carver-Allmond*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Steven J. Obermeier*, assistant district attorney, argued the cause, *Drew A. Cummings*, legal intern, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.:  In *State v. Alexander*, 268 Kan. 610, 1 P.3d 875 (2000), this court held that a defense of dwelling jury instruction should not be given in a trial where the person defending a dwelling is the alleged victim rather than a defendant. We reexamine that holding in this appeal and conclude the defense of dwelling instruction should be given when necessary to fully inform the jury regarding the legal principles that govern the case, even if it is the alleged victim who defended his or her dwelling, rather than the defendant. In this case, the trial judge gave the pattern instructions regarding defense of a dwelling and defense of self, and we conclude this was not error under the facts of this case.

In addition to giving the pattern instructions, the trial judge inserted a sentence in the defense of dwelling instruction that told the jury self-defense is not available to someone who is being forced out of a dwelling by an individual who is lawfully defending the dwelling. This addition to the pattern instructions misstated the law because the two defenses are not mutually exclusive; self-defense is still available if a person reasonably believes another's use of force is unlawful. Nevertheless, we conclude

2

this erroneous addition to the pattern instruction was harmless, and we affirm James R. Andrew's convictions.

FACTS AND PROCEDURAL BACKGROUND

The parties agree that the Court of Appeals' decision fairly and adequately summarized the facts in this case, stating:

"On the evening of January 25, 2008, Andrew's son arrived home to find his father lying face down on the floor at the bottom of the stairs. Andrew was unconscious and bloody, and the house was in disarray. According to the son, it 'kind of looked like someone was going through, maybe to try and find something.' The son called 911, and the police spoke with both Andrew and his son.

"After the police left Andrew's house, the son went to a neighboring house where [Mitchell] Garlach and A.J. Brewer lived. Although Brewer was not home at the time, Garlach was there with some of his friends. Before leaving Andrew's house, the son told Andrew where he was going and told him not to follow. However, about 20 minutes later, Andrew entered Garlach['s] and Brewer's house without knocking.

"Garlach testified that he did not know Andrew and confronted him when he came into the house. According to Garlach, he asked Andrew who he was and told him to get out of his house. Andrew, who Garlach testified appeared to be extremely drunk, said that he was looking for his son or Brewer. Garlach testified that Andrew asked him if he wanted to 'get stuck' and pulled a kitchen knife out of his pocket. Garlach claimed that he did not have any type of weapon displayed prior to Andrew pulling out the knife.

"Andrew's son, however, recalled the events somewhat differently. He testified that Garlach got angry when Andrew came into the house, that Garlach pulled a billy club out of his pocket, and that he started 'talking smack.' According to the son, when Garlach and some of his friends started to close in, Andrew pulled the kitchen knife out of his pocket. The son, who was standing between Garlach and Andrew, called 911. It appears, however, that the son did not mention the billy club during the 911 call or in his written statement to the police.

"Andrew was subsequently charged with two counts of aggravated assault—one against his son and one against Garlach. The charge against Andrew for assaulting his

3

son was dismissed at trial for insufficient evidence." *State v. Andrew*, No. 104,666, 2011 WL 6942933, at *1 (Kan. App. 2011) (unpublished opinion).

Andrew did not testify at trial. Instead, he relied on evidence of the circumstances, as primarily established through his son's testimony, to assert that he acted in self-defense. The trial judge accepted Andrew's argument and, during the jury instruction conference, proposed using the pattern instruction regarding self-defense, PIK Crim. 4th 52.200 (Use of Force in Defense of a Person). The judge also proposed using PIK Crim. 4th 52.210 (Use of Force in Defense of a Dwelling, Place of Work, or Occupied Vehicle).

As adapted to this case, the proposed self-defense instruction explained Andrew's claim that he reasonably believed force was necessary to defend himself against Mitchell Garlach's imminent use of unlawful force. In the defense of dwelling instruction, the trial judge proposed instructing that a person "is permitted to use force to the extent that it appears to him and he reasonably believes such force is necessary to prevent another person from unlawfully remaining in his dwelling." Both proposed instructions explained that "[r]easonable belief requires both a belief by the person and the existence of facts that would persuade a reasonable person to that belief." In addition, both proposed instructions indicated that someone acting in lawful self-defense or in defense of another person is not required to retreat.

All of these statements were consistent with the pattern jury instructions. But the trial judge proposed the following language be added to the defense of dwelling instruction: "When acting within this permitted use of force, self-defense is not available to the person being forced out."

Andrew objected to the proposed defense of dwelling jury instruction, arguing it was not factually appropriate because Andrew was not in Garlach's house unlawfully. Although Andrew had not testified, he proffered evidence of what his testimony would

4

have been if he had known that the judge was going to instruct the jury on the law regarding the defense of a dwelling. The substance of the proffer established that Andrew had been in Garlach's home previously to visit A.J. Brewer. He supported this point by also proffering the testimony of other witnesses who had not been called to testify during the trial. In addition, he argued the proposed addition to the pattern instruction was a misstatement of law.

The trial judge decided to give the instruction as proposed despite Andrew's objections. The judge explained his rationale for giving the modified defense of dwelling instruction:

> "[I]f [Garlach is] within his rights to put his hand on and use force against the defendant to force him out of the house[,] . . . it makes no sense at all for the defendant to be allowed to use force back against [Garlach].
>
> "Similar situation would be where the police are using legal force on somebody and they place their hands on somebody, put them into handcuffs, and the person resists and wants to claim self-defense in his battery on a law enforcement officer. It makes no sense to allow somebody who is having force legally applied to them to be able to use force back.
>
> "I've got to tell the jury if [Garlach] is using lawful force, the defendant can't use force. I understand [the defense's] position that [Andrew] wasn't involved in a violent felony, he can claim self-defense, but he can't if force is being applied lawfully to him."

Applying these instructions, the jury convicted Andrew of the aggravated assault of Garlach.

Andrew timely appealed to the Court of Appeals, raising two issues: (1) whether the jury instruction regarding defense of a dwelling correctly stated Kansas law as applicable to the facts of this case, and (2) whether the trial judge erred in refusing to instruct the jury on voluntary intoxication. In a split decision, a majority of the Court of

5

Appeals affirmed Andrew's conviction. The majority distinguished *Alexander* and essentially concluded the statement in *Alexander* prohibiting the use of the defense of dwelling instruction in any case where the defense relates to the actions of an alleged victim was dicta. *Andrew*, 2011 WL 6942933, at *2-5. Judge Arnold-Burger dissented, arguing the holding in *Alexander* controlled and, therefore, the defense of dwelling instruction should not have been given. Judge Arnold-Burger further concluded the trial judge's addition to the instruction was incorrect because the theories of self-defense and defense of a dwelling are not mutually exclusive. 2011 WL 6942933, at *6 (Arnold-Burger, J., dissenting).

Andrew timely filed a petition for review raising the same two issues as he did before the Court of Appeals. We granted review on only the defense of dwelling instructional issue. K.S.A. 2013 Supp. 22-3602(e) (party may petition the Supreme Court for review as provided in K.S.A. 20-3018[b]); K.S.A. 20-3018(b) (party aggrieved by a decision of the Court of Appeals may petition the Supreme Court for review); Supreme Court Rule 8.03(e) (2013 Kan. Ct. R. Annot. 74) (discretion in granting review); Supreme Court Rule 8.03(g)(1) (order granting review may limit the issues on review).

DEFENSE OF DWELLING AND SELF-DEFENSE INSTRUCTIONS

In reviewing a claimed instructional error, an appellate court conducts a four-step analysis. Those steps, with the accompanying standards of review, are:

> "(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and

6

degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012)." *State v. Plummer*, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 (2012).

Here, under the first step of the analysis, Andrew objected to the defense of dwelling jury instruction and articulated specific reasons for his objection. Thus, he fully preserved this issue.

Next, we must consider whether giving the defense of dwelling jury instruction was factually appropriate. As we have noted, in *Alexander*, 268 Kan. 610, this court indicated the instruction should not be given when it is the alleged victim who asserts the defense of dwelling defense, not the defendant. *Alexander* is the only published Kansas case cited by the parties to discuss whether the instruction should be given when it is the victim who defended a dwelling. If *Alexander* is correct, it was error to give the jury instruction in the present case. Nevertheless, as the Court of Appeals majority observed, there are significant factual distinctions between *Alexander* and this case.

The defendant in that case, Patricia Alexander, had been involved in a longstanding dispute with Walter Young; they fought several times over a several-week period. Initially, the skirmishes caused black eyes and other minor injuries. These skirmishes escalated to a knife fight in which Alexander fatally stabbed Young three times.

On the day of the knife fight, Young and Alexander first fought outside Young's house. Young then went inside his house. Despite Young's retreat, Alexander pounded on Young's door with a plastic baseball bat and then broke into and entered the house. Witnesses heard scuffling from inside and then saw the two emerge with Young holding Alexander in a headlock and pressing a large knife to her throat. A neighbor gained control of the knife, and the fight broke up.

Alexander, however, refused to leave, and the two went back into Young's house. Later, Young went to Alexander's niece's house and told the niece to "come over and get your Auntie before I kill her." Before Young made it back to his house, Alexander met Young in the street and threatened him with a knife. Young attempted to run away, but Alexander caught him. The two struggled, and at that point Alexander fatally stabbed Young.

As accurately explained by the Court of Appeals majority:

"In *Alexander* the evidence revealed that the stabbing occurred in the street—not in a dwelling. In fact, the victim's defense of his dwelling had taken place earlier in the day, and the Kansas Supreme Court found that the two events were 'disconnected from each other.' 268 Kan. at 614. Thus, the defense of dwelling instruction given in *Alexander* was not relevant to the defendant's claim of self-defense at the time of the stabbing." *Andrew*, 2011 WL 6942933, at *3-4.

Because Young was not defending his home when he was stabbed by Alexander, the defense of dwelling jury instruction was not factually appropriate. *Alexander*, 268 Kan. at 613-14.

While the fatal fight in *Alexander* occurred in the street, in this case Andrew assaulted Garlach in Garlach's home after Garlach threatened the use of force by displaying a billy club. See K.S.A. 2013 Supp. 21-5221(a)(1)(A) (defining "use of force" to include "[w]ords or actions that convey the threat of force"). Given these facts, a jury could have reasonably concluded Garlach was defending his home after Andrew—a stranger to Garlach—walked in uninvited and did not immediately retreat when Garlach asked Andrew why he was in Garlach's home. As the Court of Appeals noted: "Here, it is undisputed that Andrew pulled a knife while Garlach was trying to remove Andrew from his home. Unlike the victim in *Alexander*, Garlach's actions in defending his dwelling are

8

directly connected to Andrew's claim of self-defense." *Andrew*, 2011 WL 6942933, at *3. Thus, we conclude the defense of dwelling jury instruction was factually appropriate.

This leads to the question of whether the instruction was legally appropriate. Again, *Alexander* appears to control this determination with its holding that the instruction should not be given if the defense justifies the actions of the alleged victim. But it is unclear why the *Alexander* court made this statement. The statement was not necessary to the resolution of the case because the instruction was not factually appropriate, and the case could have been resolved solely on that basis. Further, in adding the statement, the *Alexander* court did not explain its reasoning nor did it cite supporting authority.

Given the facts of this case, these deficiencies in the *Alexander* analysis raise valid questions about the statement found in the opinion. Thus, we must reexamine whether a defense of dwelling jury instruction can be given if it is the victim who defended his or her dwelling.

In doing so, we recognize that the purpose of jury instructions is to state the law as applied to the facts of the case. See *State v. Torres*, 294 Kan. 135, 147, 273 P.3d 729 (2012) (jury instructions fail their purpose if they "omit[] words that may be essential to a clear statement of the law"). This leads to the question of whether the jury could fully understand the law that dictates the outcome of this case without understanding whether Garlach acted lawfully when he incited a reaction from Andrew. The trial judge and the Court of Appeals majority concluded that both instructions—defense of a dwelling and defense of self—were necessary to a full understanding of the law. As the Court of Appeals noted: "[T]he jury in this case had to decide whether Andrew was in Garlach's home unlawfully, whether Andrew provoked the incident, whether Garlach used reasonable force in an attempt to remove Andrew from his home, and whether Andrew was entitled to use force to defend himself in Garlach's home." *Andrew*, 2011 WL

9

6942933, at *3. As the Court of Appeals concluded, applying *Alexander* would leave the jury without any guidance regarding the law relating to the lawfulness or unlawfulness of Garlach's efforts to remove Andrew from Garlach's home.

Further, we can find no authority or basis for a rule absolutely prohibiting giving a defense of dwelling jury instruction when the defense is used to justify the actions of the alleged victim. The defense of a dwelling is statutorily defined, and the language of the statute does not make the distinction. Rather, K.S.A. 2013 Supp. 21-5223, refers generically to a "person," stating:

> "(a) A *person* is justified in the use of force against another when and to the extent that it appears to such person and such person reasonably believes that such use of force is necessary to prevent or terminate such other's *unlawful entry* into or attack upon such person's dwelling, place of work or occupied vehicle.
> "(b) A *person* is justified in the use of deadly force to prevent or terminate *unlawful entry* into or attack upon any dwelling, place of work or occupied vehicle if such person reasonably believes that such use of deadly force is necessary to prevent imminent death or great bodily harm to such person or another.
> "(c) Nothing in this section shall require a person to retreat if such person is using force to protect such person's dwelling, place of work or occupied vehicle." (Emphasis added.)

The legislature could have limited the applicability of the statute to a "defendant" but instead it referred to a "person." In this regard, the lack of a limitation on the applicability of the statute makes the legislature's intent clear and unambiguous. When a statute is unambiguous, a court attempting to determine legislative intent merely interprets the statutory language, it is not free to read words into the statute. *State v. Brown*, 295 Kan. 181, Syl. ¶ 5, 284 P.3d 977 (2013). Consequently, it would be inappropriate to read the statute as being limited to a defendant. We, therefore, disapprove of the statement in *Alexander* that "[b]ecause Young [the victim] was not on

10

trial, Instruction No. 14 [the pattern defense of dwelling instruction] should not have been given." *Alexander*, 268 Kan. at 613.

In this case, Andrew entered Garlach's house without knocking. Both Andrew's son and Garlach testified that no one opened the door to let Andrew in; Garlach just heard the door shut as Andrew stepped inside. Although Andrew had been to the house before, there was no evidence he had permission to enter the home whenever he wished. Thus, a jury question arose as to whether Garlach could reasonably defend his dwelling under the circumstances. Consequently, we hold the trial judge did not err in providing the jury with both PIK Crim. 4th 52.200 (Use of Force in Defense of a Person) and PIK Crim. 4th 52.210 (Use of Force in Defense of a Dwelling, Place of Work, or Occupied Vehicle).

This does not end our analysis, however, because the trial judge modified the defense of dwelling pattern instruction by adding the following sentence: "When acting within this permitted use of force, self-defense is not available to the person being forced out." In dissent, Judge Arnold-Burger concluded this additional sentence "'confuse[d] or muddle[d] the issue of self-defense'" by advising the jury that the two theories were mutually exclusive. *Andrew*, 2011 WL 6942933, at *5 (Arnold-Burger, J., dissenting). Consequently, Judge Arnold-Burger determined that "[t]he instruction erroneously informed the jury that Garlach's defense of his dwelling eradicated Andrew's claim of self-defense." 2011 WL 6942933, at *6 (Arnold-Burger, J., dissenting).

To determine whether the defenses are mutually exclusive we consider the self-defense statute, K.S.A. 2013 Supp. 21-5222, which provides:

> "(a) A person is justified in the use of force against another when and to the
> extent it appears to such person and such person reasonably believes that such use of
> force is necessary to defend such person or a third person against such other's imminent
> use of *unlawful force*.

"(b) A person is justified in the use of deadly force under circumstances described in subsection (a) if such person reasonably believes that such use of deadly force is necessary to prevent imminent death or great bodily harm to such person or a third person.

"(c) Nothing in this section shall require a person to retreat if such person is using force to protect such person or a third person." (Emphasis added.)

The language of the self-defense statute is also unambiguous. In sum, it provides that a person is justified in the use of force only when the person reasonably believes force is necessary against another's imminent use of *unlawful force*. A legally sufficient claim of self-defense requires evidence supporting both (1) a subjective belief on the part of the defendant that (a) the use of unlawful force is imminent and (b) the use of force is necessary and (2) an objective determination that a reasonable person would have come to the same conclusions. *State v. Walters*, 284 Kan. 1, 9, 159 P.3d 174 (2007).

In order for it to be objectively reasonable for a defendant to use force in self-defense, the defendant must "reasonably believe it to be, 'unlawful' force—meaning, in general, that it be a crime or tort (generally assault and battery) for the adversary to use the force. Thus one cannot properly defend himself against known lawful force." 2 LaFave, Substantive Criminal Law § 10.4 (2d ed. 2003). For example, considering the analogy used by the trial judge, a self-defense instruction is generally not available for resisting arrest by an identified, uniformed police officer. If an officer must use force to make an arrest, the arrestee cannot respond with force. *State v. Tyler*, 251 Kan. 616, 626, 840 P.3d 413 (1992).

Nevertheless, the rule is qualified by stating that self-defense is not available against "*known* lawful force." (Emphasis added.) 2 LaFave, Substantive Criminal Law § 10.4. This rule was followed by this court in *Tyler*, which is instructive.

In *Tyler*, several sheriff officers executed a search warrant. They entered a house with a battering ram, announcing who they were. St. John Tyler, however, was in the kitchen at the back of the house and did not hear the officers' announcement. When an officer came into the kitchen, Tyler shot the officer. Tyler testified that he thought the officer was a robber when the officer, who had long hair and a beard, ran into the kitchen with his gun drawn. He and other witnesses explained there had been rumors that the house was going to be robbed, and while the officer wore a jacket with a sheriff office insignia, he was not in full uniform. Tyler requested jury instructions on self-defense and defense of a dwelling. The trial judge refused the request, reasoning the defenses are only available when one is defending against unlawful force, and the officer's force was lawful. In other words, the trial judge adopted the same position as that taken by the trial judge in this case.

On appeal, this court in *Tyler* found the trial judge's reasoning was flawed. "Under the circumstances where a person unidentifiable as a law enforcement officer uses force to execute a warrant where a reasonable person would believe the officer was an unlawful aggressor, then force is justified to repel the aggressor." 251 Kan. at 626.

Likewise, in this case, the trial judge's ruling and his addition to the pattern instruction was too broad and, consequently, incorrect. Contrary to the defense of dwelling jury instruction read to the jury by the judge in this case, defense of self is not absolutely prohibited when another party has used lawful force. As applied under the facts of this case, even if the use of force in defense of a dwelling is lawful, an individual responding to that force may counter with reasonable force if he or she reasonably believes the force used to defend the dwelling is unlawful. Thus, the trial judge's modification of the pattern instruction was erroneous.

In the final step of our analysis, we "must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan.

13

541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012)." *Plummer*, 295 Kan. 156, Syl. ¶ 1. Here, the instructional error impacts a constitutional right, the right to present a theory of defense. Consequently, we must assess whether the error was harmless under the federal constitutional harmless error standard, *i.e.*, whether there was "no reasonable possibility" that the error contributed to the verdict. See *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705, *reh. denied* 386 U.S. 987 (1967); *Ward*, 292 Kan. 541, Syl. ¶ 6; see also *State v. Flynn*, 299 Kan. 1052, 1069, 329 P.3d 429 (2014) (applying federal constitutional harmless error standard to instructional error where error implicated defendant's theory of defense).

Judge Arnold-Burger concluded the error was reversible, stating:

"At trial there was evidence presented through Andrew's son, who was a prosecution witness and also an alleged victim in the case, that Andrew knew the cotenant, Brewer, and had been in the house before. . . . Andrew and Garlach did not know each other. . . . Therefore, the jury could have concluded that Andrew reasonably believed he had permission to be in the house because he knew Brewer; that he did not know Garlach had authority to ask him to leave because he did not know Garlach; and that Andrew brought out the knife to defend himself against Garlach and his friends who started to surround him. But based on the instruction given, if the jury believed that Garlach did in fact have the authority to use force to convince Andrew to leave, Andrew was prohibited from claiming self-defense." *State v. Andrew*, No. 104,666, 2011 WL 6942933, at *6 (Kan. App. 2011) (unpublished opinion) (Arnold-Burger, J., dissenting).

While we otherwise have agreed with Judge Arnold-Burger's analysis, at this point we depart, largely because we believe that it is irrelevant that Andrew had previously been a guest in Garlach's and Brewer's home. There was no evidence that Andrew had a standing invitation to enter the house at will. Rather, he entered as a person with no explicit privilege to be where he was.

14

Other courts have recognized that people who enter a home without permission "face the possibility of lawful physical force by a person defending against the trespass [and] are not in the same position as an otherwise innocent person . . . with respect to the privilege of using force in self-defense." *People v. Toler*, 9 P.3d 341, 353 (Colo. 2000). The Colorado Court of Appeals applied *Toler* and further explained that "[b]ecause every person is generally presumed to know the law [citation omitted], it is presumed that defendant knew the victim could employ lawful force against him if he unlawfully entered her dwelling." *People v. Hayward*, 55 P.3d 803, 806 (Colo. App. 2002); *cf.* K.S.A. 2013 Supp. 21-5224(a)(1)(A) ("a person is presumed to have a reasonable belief that deadly force is necessary" if the force is used against someone who "[i]s unlawfully or forcefully entering" a dwelling); K.S.A. 2013 Supp. 21-5220 (K.S.A. 2013 Supp. 21-5224 to be applied retroactively). The parties do not cite these Kansas statutes or argue for their application in this case; consequently, we do not base our decision on them. Nevertheless, we find the rationale of our sister state persuasive.

As a result, when measuring Andrew's actions against an objective standard, we begin with the presumption that Andrew should have recognized that the law allowed anyone who dwelled in the home to use force against him. Even though there was evidence that Andrew did not know Garlach, Andrew's son testified that as soon as Andrew entered, Garlach asked: "'Why are you in my house?'" The reference to "'my house'" clearly identified Garlach as someone with the right to defend his home. We do not know what Andrew thought when he heard this statement because he did not testify—*i.e.*, there is no direct evidence of the subjective prong. The State does not challenge Andrew's request on this basis, however. Rather, the State asks us to focus on the objective prong, and Andrew's testimony is not necessary in order for us to do so.

Based on our evaluation, we conclude Andrew's use of force against Garlach was objectively unreasonable. Once Andrew knew he was in Garlach's house against Garlach's wishes, Andrew was presumed to know that Garlach's use of force was lawful.

15

See *State v. Moore*, 287 Kan. 121, 131-33, 194 P.3d 18 (2008) (discussing cases where appellate court determines use of force objectively unreasonable); *State v. Jackson*, 262 Kan. 119, 123-24, 936 P.2d 761 (1997) (after defendant had been repeatedly told to leave a club, bouncer placed hands on defendant and again told him to leave; defendant's use of force not objectively reasonable because bouncer's actions were lawful); *Tyler*, 251 Kan. at 626 (finding use of force objectively unreasonable).

Consequently, under the facts of this case, Andrew's use of force was unlawful, and there is not a reasonable possibility that the error in the jury instructions affected the outcome of the trial.

Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

MORITZ, J., not participating.