NOT DESIGNATED FOR PUBLICATION

No. 118,483

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TAORO C. PINKSTON,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; BENJAMIN L. BURGESS, judge. Opinion filed December 7, 2018. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., BUSER, J., and SIDNEY R. THOMAS, District Judge, assigned.

PER CURIAM: Taoro C. Pinkston appeals his conviction for the aggravated assault of Will Kincaid. On appeal, Pinkston claims reversible error because the trial court failed to submit a self-defense instruction to the jury. Upon our review, we conclude there was no legal or factual basis for the trial court to sua sponte provide the jury with a self-defense instruction. Accordingly, we hold the trial court did not err by failing to provide the jury with a self-defense instruction, and we affirm the conviction.

1

On September 10, 2016, Pinkston drove his Mazda pickup truck slowly down Kincaid's dead-end street. At trial, Pinkston testified that he was looking for a friend who was having car trouble. Kincaid, who was having a party in his garage, saw Pinkston drive by his house. Kincaid recognized Pinkston because, according to him, Pinkston had been stalking his residence for the past two months. Kincaid claimed that Pinkston had yelled at his fiancée and left notes on their vehicles. Pinkston's behavior was apparently the result of Kincaid's fiancée being a close friend with a woman who had recently terminated a romantic relationship with Pinkston. Although Pinkston admitted to previously driving down the street, he denied the stalking and testified that on those occasions he was just looking for junk or for a friend who lived in the vicinity.

When Kincaid recognized Pinkston, he said, "[H]ey, that's him!" to John Aaron, the father of Kincaid's fiancée, and the two men went into the street to confront Pinkston. By the time Kincaid and Aaron approached the truck, Pinkston had turned the vehicle around facing the entrance to the street. Kincaid approached the passenger side of the truck and Aaron approached the driver's side. Pinkston testified that it was dark and he could not see who was approaching his truck.

Aaron told Pinkston to "stop the [expletive] car." Aaron asked Pinkston why he kept coming around and told him to roll his window down. Pinkston did not roll his window down and, at some point, Aaron punched the driver's side window twice. Pinkston reversed his vehicle about 15 to 30 feet before accelerating forward and, according to Kincaid, swerving towards him. Of note, Kincaid testified that he saw Pinkston turn the steering wheel towards him as the car accelerated. Kincaid put his hands on the truck's hood and pushed himself away from the vehicle, but the truck hit his leg and knee causing Kincaid to stumble.

Kincaid's fiancée testified that it did not appear that Pinkston was trying to escape and there was room for Pinkston to drive straight forward instead of swerving towards Kincaid. On the other hand, Pinkston testified that he did not swerve toward either Kincaid or Aaron, nor did he hit them or try to hit them with his truck.

At trial, Pinkston's defense was a general denial of any criminal wrongdoing. He claimed he did not knowingly put Kincaid in apprehension of immediate bodily harm but he was only trying to drive away from the confrontation.

During the jury instructions conference, Pinkston's counsel asked the district court to include a lesser included offense instruction for simple assault, which was granted. But defense counsel did not request a self-defense instruction. During the jury instructions conference, the trial court stated that the sole issue was "whether or not [Pinkston] knowingly placed Mr. Kincaid in reasonable apprehension of immediate bodily harm." The trial court then identified the parties' two conflicting theories of the case—Pinkston either knowingly swerved his truck towards Kincaid or Pinkston was just leaving the confrontation. The defense agreed with the trial court's characterization.

The jury convicted Pinkston of aggravated assault and he was sentenced to 29 months in prison. Pinkston filed a motion for acquittal and a motion for new trial based on insufficient evidence to support the conviction but the district court denied both motions. Pinkston appeals.

ANALYSIS

On appeal, Pinkston contends the trial court committed reversible error because it had a duty to give a self-defense jury instruction since defendants are entitled to every affirmative defense instruction that is supported by competent evidence.

3

Our standard of review provides: "'When a party fails to object to or request a jury instruction at trial, K.S.A. 22-3414(3) limits appellate review to a determination of whether the instruction was clearly erroneous.'" *State v. McLinn*, 307 Kan. 307, 318, 409 P.3d 1 (2018) (quoting *State v. Knox*, 301 Kan. 671, 680, 347 P.3d 656 [2015]). When the appellate court applies the clear error standard, it will only reverse the trial court if it is firmly convinced that the jury would have reached a different verdict if the instruction error had not occurred. The party claiming a clear error has the burden to demonstrate the necessary prejudice. *McLinn*, 307 Kan. at 318.

In the present case, Pinkston candidly concedes that at trial his defense counsel did not request a self-defense instruction. As a result, in accordance with K.S.A. 2017 Supp. 22-3414(3), we will review this instructional issue to determine if there was a clear error.

"Generally, a defendant is entitled to instructions on the law applicable to his or her defense theory if there is sufficient evidence for a rational factfinder to find for the defendant on that theory." *State v. McCullough*, 293 Kan. 970, 974, 270 P.3d 1142 (2012). In determining whether the trial court clearly erred in failing to give the self-defense instruction, our court must decide whether the instruction was legally and factually appropriate under unlimited review of the entire record. *McLinn*, 307 Kan. at 318.

Pinkston contends a self-defense jury instruction was both legally and factually appropriate under the facts and circumstances of this case. He cites K.S.A. 2017 Supp. 21-5222(a) for the proposition that a person is legally entitled to use force against another person in order to defend themselves from another's unlawful use of force. Importantly, Pinkston admits that he "did not present direct evidence that he intended to act in self-defense." Rather, he argues that circumstantial evidence showed that his driving constituted "using minimal force to try to avoid violence." Pinkston argues that his use of

force was reasonable under the circumstances and that if the trial court had provided the jury with a self-defense instruction, he would have been acquitted.

On the other hand, the State contends that at trial Pinkston did not claim self-defense or present any evidence in support of that particular defense. The State argues that the trial court is not obligated to instruct the jury on every possible defense, especially when a self-defense instruction would interfere with a defendant's chosen defense. The State asserts that Pinkston's defense was that he did not hit or attempt to hit Kincaid, he only attempted to leave the confrontation by driving away. In short, a self-defense instruction would have directly conflicted with Pinkston's chosen defense that he was innocent of attempting to strike Kincaid with his truck.

In determining whether a self-defense instruction is legally appropriate, our court must look at the applicable law regarding self-defense. "Legal appropriateness is whether the instruction fairly and appropriately states the applicable law." *State v. Verstraete*, No. 117,455, 2018 WL 3596175, at *4 (Kan. App. 2018) (unpublished opinion), *petition for rev. filed* August 17, 2018. Under K.S.A. 2017 Supp. 21-5222(a), a person may use force against another when it appears to that person and a reasonable person that such force is necessary to defend themselves against another's imminent use of unlawful force.

> "A legally sufficient claim of self-defense requires evidence supporting both (1) a subjective belief on the part of the defendant that (a) the use of unlawful force is imminent and (b) the use of force is necessary and (2) an objective determination that a reasonable person would have come to the same conclusions." *State v. Andrew*, 301 Kan. 36, 45, 340 P.3d 476 (2014).

Here, although Pinkston testified on his own behalf at trial, the record does not contain any testimony from Pinkston that he had a subjective belief that unlawful force was imminent and that his use of force in self-defense was necessary. Although Pinkston said that he rolled up his windows and locked his doors when he saw two unknown

individuals screaming as they approached his car, he never testified that he believed he was in danger or that unlawful force was imminent. In fact, Pinkston testified that he did not say anything to either Aaron or Kincaid or indicate that he wanted them to leave him alone. Pinkston also never testified that he believed any force, let alone deadly force by driving his truck toward Kincaid, was necessary to protect himself from imminent unlawful force. According to Pinkston, he simply was driving his truck away from the confrontation. Upon our review there was no direct or circumstantial evidence that Pinkston subjectively believed it was necessary to engage in self-defense.

Moreover, at trial Pinkston did not present any evidence suggesting that a reasonable person would have objectively believed that the use of deadly force was necessary under the circumstances. Pinkston was in a locked car with his windows rolled up. Aaron and Kincaid did not exhibit any weapons. Additionally, eyewitness testimony indicated there was room on the street so that Pinkston could drive away without striking anyone with his vehicle. Swerving his truck toward Kincaid was not an objectively necessary use of force to end the encounter, especially when unlawful use of force was not imminent. Quite simply, given the facts and circumstances presented at trial, the trial court did not err in failing to provide the jury sua sponte with a self-defense instruction.

Not only was a self-defense instruction legally and factually inappropriate, in this case such an instruction was improper for another reason. Importantly, a self-defense instruction would have conflicted with Pinkston's chosen defense theory—that he did not commit the crime because he did not attempt to assault Kincaid by swerving his car towards him. In this regard, Kansas appellate courts have recognized that a trial court does not have a duty to give an instruction when doing so would conflict with the defendant's chosen defense.

Our Supreme Court has written that "while inconsistent theories of defense are permissible, trial courts should not interfere with a defendant's chosen defense theory by

6

giving an instruction which neither party requested and which may undermine defendant's chosen theory." *State v. Trussell*, 289 Kan. 499, 505, 213 P.3d 1052 (2009). Moreover, trial courts are not obligated to provide instructions on every possible defense theory just because some supporting evidence was introduced at trial when the defendant has not relied on the particular defense theory. 289 Kan. at 505.

Our court applied the *Trussell* holding in a self-defense case in *State v. Luarks*, No. 106,643, 2012 WL 6634395 (Kan. App. 2012) (unpublished opinion), *rev'd on other grounds by* 302 Kan. 972, 360 P.3d 418 (2015). In *Luarks*, the defendant was convicted of aggravated battery and, for the first time on appeal, claimed the district court erred by failing to give the jury a self-defense instruction. Luarks argued there was evidence that he reasonably believed force was necessary to defend himself. Conversely, the State argued Luarks did not present any evidence that he subjectively believed it was necessary to defend himself against the imminent use of force.

Our court noted that Luarks did not testify at trial and there was no other direct or circumstantial evidence to prove his subjective belief at the time of the aggravated battery. 2012 WL 6634395, at *4. Moreover, at trial, defense counsel expressly denied that Luarks committed aggravated battery by stabbing the victim with a knife. We concluded these reasons explained why Luarks did not employ a self-defense theory at trial and we also observed that a self-defense theory was directly contradictory to Luark's actual defense theory that he did not stab the victim. 2012 WL 6634395, at *5.

Our court held that the trial court did not err by failing to give a self-defense instruction, stating: "Given the total lack of evidence to support a self-defense theory and Luarks' consistent denial at trial that he stabbed Cox, an instruction on self-defense would have directly undermined Luarks' defense." *Luarks*, 2012 WL 6634395 at *5.

*Trussell* and *Luarks* are dispositive of the issue on appeal. In this case, Pinkston did not request a self-defense instruction at trial. Instead, Pinkston presented the defense of a general denial that he assaulted Kincaid by swerving his truck towards him. Pinkston's chosen defense, which he argued to the jury, was directly contradictory to a theory of self-defense. As a result, it would have been a mistake of law for the trial court to undermine Pinkston's chosen defense by sua sponte providing the jury with a self-defense instruction.

Moreover, as in *Luarks*, Pinkston provided no direct or circumstantial evidence that he subjectively believed that by swerving his truck towards Kincaid that he was necessarily protecting himself from the imminent use of unlawful force. There was also no evidence showing that a reasonable person would objectively believe that the use of self-defense under these circumstances was justified.

Because giving the jury sua sponte a self-defense instruction under the facts and circumstance of this case would have been legally and factually inappropriate, we hold the trial court did not commit instructional error.

Affirmed.