NOT DESIGNATED FOR PUBLICATION

No. 125,167

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOHN WALTER WORTHINGTON,
*Appellant*.


MEMORANDUM OPINION

Appeal from Douglas District Court; JAMES R. MCCABRIA, judge. Submitted without oral argument. Opinion filed February 9, 2024. Affirmed.

*Brenda J. Clary*, of Law Office of Brenda J. Clary, of Lawrence, for appellant.

*Jacob Kuckelman*, student legal intern, *Brian Deiter*, assistant district attorney, *Suzanne Valdez*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before HILL, P.J., HURST, J., and TIMOTHY G. LAHEY, S.J.


HURST, J.: After a verbal altercation about loud music and a noisy motorcycle devolved into a neighborhood and family brawl, a jury convicted John Walter Worthington of misdemeanor battery and disorderly conduct. Worthington appeals only the misdemeanor battery conviction, claiming he acted in self-defense during the skirmish and the State failed to prove otherwise. Although some reasonable people— including the district judge in the case—might agree that Worthington acted in self-

1

defense, there was sufficient evidence upon which a reasonable juror could find that Worthington did not act in self-defense and was guilty of battery. Accordingly, Worthington's conviction of misdemeanor battery was supported by sufficient evidence, and it is therefore affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

On August 8, 2020, Worthington and his neighbor, G.P., got into a physical altercation that devolved into a neighborhood group brawl involving their relatives, spouses, and children. After an investigation, police arrested Worthington and charged him with misdemeanor battery and disorderly conduct. Not surprisingly, witnesses presented contradicting accounts of the neighborhood fight at trial. Although not an ideal timeline, the best way to review the evidence is to outline the witness testimony, which includes the contradictory accounts.

*G.P.'s Testimony*

G.P. testified that he and his girlfriend arrived home at about 12:30 a.m. on August 8, 2020, when his neighbor from across the cul-de-sac, Worthington, yelled at him about his loud motorcycle and music. G.P., unsure why Worthington was yelling, walked across the street toward Worthington and told him to go inside and go to bed. G.P. testified that Worthington spat at him during this encounter. But, according to one of the testifying police officers, G.P. did not tell them at the scene Worthington had spat at him. G.P. testified that after Worthington spat at him, "the fight [was] on." G.P. admitted to kicking and hitting Worthington but testified the fight was mutual.

G.P. said that Worthington's mom came outside and got in his face, but Worthington ended up hitting his own mom during the dispute and tried to blame G.P.

2

G.P. also testified that his girlfriend stepped between them and Worthington hit her in the face, which started another round of fighting.

G.P.'s daughter and her boyfriend then got involved in the fight which caused G.P. to rejoin the fray. During the second round of fighting, G.P. ended up on the ground with Worthington's mom pulling on his hair while someone choked him and someone else hit him in the ribs with a bat. When G.P. tried to get up, someone hit him in the face and broke his dentures in three places requiring 10 stitches inside his mouth. G.P. eventually got up and went to his porch.

Video footage from a nearby doorbell camera was shown to the jury while G.P. described what had occurred. G.P. agreed the video footage looked like a bunch of people rolling around wrestling and throwing punches, but it was hard to tell who was doing what. The video footage was not included in the record on appeal.

During cross-examination, G.P. admitted he never told police that Worthington spat at him when the altercation began. Excluding G.P.'s allegation that Worthington spat at him initiating the brawl, G.P. admitted that he made the first physical contact.

*G.P.'s girlfriend's testimony*

G.P.'s testimony and his girlfriend's testimony largely match. She said that when they arrived home on the evening of the incident, Worthington was standing in the yard waving and yelling. She testified that she could not tell what Worthington was yelling about and that when G.P. approached him they started fighting and she tried to stop the fight.

G.P.'s girlfriend testified that Worthington knocked down his own mom and then knocked her down. She called 911 when Worthington's father came outside with a

3

baseball bat. After running inside to get G.P.'s daughter and her boyfriend for help, G.P.'s girlfriend came outside and saw Worthington's mom pulling G.P.'s hair while Worthington's father hit G.P. with a bat and Worthington kicked him.

*Worthington's testimony*

Worthington testified he had no incidents with G.P. previously, and the disturbance at issue began before the video doorbell footage started. Worthington's testimony about the beginning of the altercation largely matched G.P.'s. He explained that when G.P. and his girlfriend came home around 12:30 a.m. Worthington was sitting on his patio and yelled at G.P. to be quiet. Worthington claimed that G.P. approached him and the two had a verbal altercation that was not captured on the doorbell video footage. Worthington denied spitting at G.P. and testified G.P. may have been confused because it was raining. Worthington testified that G.P. kicked him in the thigh and each then went back to their own homes. Worthington sat back down on the patio to calm down and looked for his phone.

While still on his patio, Worthington testified that two other people came from G.P.'s house and Worthington yelled at them to get off his property. Worthington picked up a chair to create a barrier between him and the individuals approaching while he backed up and kept yelling. Worthington then walked to the edge of the street and dropped the chair on the ground—none of which was depicted on the doorbell video footage. There was no physical contact between Worthington and those two individuals at that time.

Worthington testified that after several minutes had passed, he walked back into the street toward G.P.'s house because he "was both assaulted and battered . . . [a]nd my understanding is that I have the right to defend myself." Worthington testified that he was still afraid that G.P. was a danger as he walked back to the street. He explained that after

4

being at his house looking for his phone, he walked back into the street toward G.P.'s house because he "was very angry after being assaulted and battered by [G.P.]." The doorbell video footage begins with Worthington walking toward the street and recorded Worthington and G.P. engaged in a physical altercation.

*Worthington's mom's testimony*

Worthington's mom testified she was in bed and heard her son yelling for someone to get off their property. When she went outside she saw G.P. and his girlfriend walking into their yard and Worthington picking up a chair to defend himself. She tried to break up the fight between G.P. and Worthington, and that is when G.P. punched her in the nose. She testified that when she tried to get someone off Worthington, G.P.'s daughter started choking her and threw her phone. Worthington's mom claims she was choked after the doorbell video footage ended.

Worthington's mom did not see who threw the first punch. Worthington's mom denied pulling G.P.'s hair and denied that her husband hit G.P. She testified that the doorbell video footage did not show G.P.'s house and did not show what happened just before or after the recorded fight.

*Officer Maurice H.'s testimony*

Officer Maurice H. testified that he was dispatched to the disturbance on August 8, 2020, and was the first officer at the scene. When the officer arrived he saw a large group of six or seven individuals in the street actively fighting.

Officer Maurice H. testified that he spoke to Worthington's mom who had no noticeable injuries. She told the officer that she was in bed and heard her son yell, "Get the F out of here." Worthington's mom went outside and saw her son arguing with G.P.

5

and said that G.P. punched her and knocked her to the ground. Officer Maurice H. also talked to Worthington's dad who said he came outside after the fight started and saw his wife on the ground. He said he got a wooden baseball bat and tapped G.P. on the back to try to break up the fight.

*Officer Austin C.'s testimony*

Officer Austin C. was dispatched around 12:50 a.m. on August 8, 2020, for a large fight. He found a group of people on G.P.'s side of the street yelling and upset. Another officer was already on the scene trying to take the baseball bat from Worthington's dad.

Officer Austin C. spoke with G.P. who was bleeding from his mouth; had some red marks on his back; and said he had been hit in the face and back with a baseball bat. The officer confirmed that when he interviewed G.P. the evening of the disturbance, G.P. never told him that Worthington spat at him and said the fight started when Worthington tried to hit G.P. but missed. G.P.'s girlfriend also told the officer that Worthington tried to hit G.P. but missed and that G.P. kicked Worthington.

*Officer Austin T.'s testimony*

Officer Austin T. was also dispatched to the scene and saw the parties in the street and in G.P.'s yard when he arrived. Officer Austin T. heard Worthington yell that if the officers did not arrest G.P. and his friends he would kill them for hitting his mom.

Worthington told Officer Austin T. that he yelled at G.P. about his loud motorcycle and then G.P. walked toward Worthington, asked him if he wanted to fight, and punched him in the head. Worthington then punched G.P. multiple times, and when G.P. fell to the ground Worthington held him down. According to the officer, Worthington then retreated to his house.

6

After taking statements, the police officers determined Worthington hit G.P. multiple times and arrested him.

*Officer Mark H.'s testimony*

Officer Mark H. transported Worthington to jail the evening of the disturbance. During the transport, Worthington made unsolicited statements claiming he engaged in the disturbance in his defense as well as his mom's defense. Worthington had some scratches on his body, was bleeding on one foot, and had some pain and redness around his throat.

*Jury verdict and posttrial proceedings*

Worthington asserted the affirmative defense of self-defense to the misdemeanor battery charge. The district court concluded that Worthington presented sufficient competent evidence to instruct the jury on self-defense, to which the State did not object. See K.S.A. 2020 Supp. 21-5108(c) ("A defendant is entitled to an instruction on every affirmative defense that is supported by competent evidence."). The jury ultimately returned a guilty verdict on both counts, and Worthington orally moved for judgment notwithstanding the verdict on the misdemeanor battery charge. At the later sentencing hearing, the district court denied Worthington's motion for judgment notwithstanding the verdict, reasoning in part:

> "I have to be frank, if it had been my decision . . . I don't know that I would have concluded that there was a point in time when a reasonable person in the shoes of Mr. Worthington would have thought the threat is over with, I don't need to continue any further. Frankly, that didn't occur to me as I watched that video.
> ". . . [E]ven though I might have looked at it differently, the jury certainly had facts before it in which a reasonable fact-finder could have concluded that he did use more force than was justified, and therefore lost the ability to claim self-defense, and so at that

7

point committed a battery which they were instructed that he caused physical contact with [G.P.] in a rude, insulting or angry manner."

Worthington timely appealed.

Worthington appeals only his conviction for misdemeanor battery but does not claim insufficient evidence to support that conviction. Rather, Worthington claims only that there was insufficient evidence to disprove his affirmative defense of self-defense. This court analyzes a defendant's challenge to the sufficiency of the evidence supporting a conviction by determining whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. *State v. Couch*, 317 Kan. 566, 582, 533 P.3d 630 (2023). In making that determination, this court reviews the available evidence in the light most favorable to the State and does not reweigh evidence, resolve evidentiary conflicts, or reassess witness credibility. *State v. Butler*, 317 Kan. 605, 607-08, 533 P.3d 1022 (2023). This is a high burden, and only when the testimony is so incredible that no reasonable fact-finder could have found the defendant guilty beyond a reasonable doubt will this court reverse a guilty verdict. *State v. Milo*, 315 Kan. 434, 450, 510 P.3d 1 (2022). If required, this court applies an unlimited review to interpret the criminal statutes underlying Worthington's conviction. *State v. Pepper*, 317 Kan. 770, 777, 539 P.3d 203 (2023).

A jury convicted Worthington of misdemeanor battery, which is ". . . knowingly causing physical contact with another person when done in a rude, insulting or angry manner." K.S.A. 2020 Supp. 21-5413(a)(2). In this context, a person acts "'knowingly'" when they are "aware of the nature of such person's conduct or that the circumstances exist," or when they are "aware that such person's conduct is reasonably certain to cause

8

the result." K.S.A. 2020 Supp. 21-5202(i). Worthington claims that he acted in self-defense and thus the jury's verdict must be reversed.

"Self-defense is an affirmative defense the accused may use to justify actions that otherwise would constitute the charged crime." *State v. Keys*, 315 Kan. 690, 714, 510 P.3d 706 (2022). Self-defense can be asserted as an affirmative defense when:

> "A person is justified in the use of force against another when and to the extent it appears to such person and such person reasonably believes that such use of force is necessary to defend such person or a third person against such other's imminent use of unlawful force." K.S.A. 2020 Supp. 21-5222(a).

The self-defense statute contains a two-part test: (1) a subjective showing that the defendant sincerely and honestly believed it was necessary to use force to defend himself; and (2) the objective showing that a reasonable person in the defendant's circumstances would have believed the same. See *State v. Andrew*, 301 Kan. 36, 45, 340 P.3d 476 (2014). Once Worthington showed that his claim of self-defense was supported by competent evidence and the district court allowed the affirmative defense, the burden shifted to the State to disprove Worthington's claim of self-defense beyond a reasonable doubt. K.S.A. 2020 Supp. 21-5108(c). "A defendant is entitled to an instruction on every affirmative defense that is supported by competent evidence," and "[o]nce the defendant satisfies the burden of producing such evidence, the state has the burden of disproving the defense beyond a reasonable doubt." K.S.A. 2020 Supp. 21-5108(c).

Worthington claims that the State failed to meet its burden because "[t]he evidence was insufficient for the jury to find beyond a reasonable doubt that [Worthington] did not strike the alleged victim in only self-defense." Worthington argues:

> "It appears the jury determined that, at some point, [Worthington] no longer needed to fight to defend himself and/or his parents, but the evidence clearly shows that [G.P.] had

9

walked away but returned and that people connected with him joined the fight, which was still ongoing when police arrived.

"... No reasonable jury could have concluded that [Worthington] was not defending himself and his parents at any point before police arrived and broke up the fight."

Worthington further argues that in denying his motion notwithstanding the verdict, the district court judge "opined that he would not have reached the same conclusion as the jury." Worthington claims the district court applied the wrong standard in finding "probable cause that the force was not justified" rather than basing the decision on the "standard of beyond a reasonable doubt."

The jury heard testimony that G.P. and Worthington got into a verbal dispute where Worthington spat at G.P. Although there was also testimony contradicting that version of events, and Worthington denies spitting at G.P., this court reviews the sufficiency of the evidence in the light most favorable to the State without reweighing evidence or reassessing credibility. *Butler*, 317 Kan. at 608. This court must decide if the State met its burden to overcome Worthington's claim of self-defense applying a somewhat maundering standard. The standard requires the appellate court to determine whether it is firmly convinced that a rational fact-finder could conclude beyond a reasonable doubt that Worthington did *not* subjectively believe it was necessary to use force to defend himself. More simply stated, whether the State proved that Worthington committed battery that was not an act of self-defense.

Even assuming the jury did not believe Worthington initiated the dispute by spitting at G.P., Worthington's evidence of self-defense is undermined and contradicted by other evidence. There is ample testimony that Worthington made rude physical contact with G.P. well after the initial interaction. Worthington testified that after each party returned to their homes, he chose to walk back toward G.P.'s house because he had been "assaulted and battered" and had "the right to defend [him]self." The jury could

10

have found that the original altercation was over and Worthington's actions essentially restarted the altercation. Worthington also testified that he walked back into the street toward G.P.'s house because he "was very angry after being assaulted and battered by [G.P.]." The jury heard Worthington's own testimony that after waiting at home and looking for his phone for several minutes, he reengaged G.P. because of anger, pride, or retaliation—and not because he reasonably believed it was necessary to use force to defend himself against imminent use of unlawful force.

Not only was there evidence that Worthington did not reasonably believe he needed to defend himself against imminent use of unlawful force, but the State also sufficiently demonstrated that a reasonable person in Worthington's circumstances would not have perceived it necessary to use force in self-defense. For example, at one point in the disturbance, G.P. was laying on the ground being attacked by three people—Worthington and his parents. Worthington's mom pulled G.P.'s hair while his father hit him with a bat and Worthington kicked him. Worthington also testified that while he was at his home calming down after the initial interaction, two people from G.P.'s home approached his property and left without making physical contact. Worthington did not allege they made threatening statements during this interaction. The jury was also shown doorbell video footage that showed Worthington yelling and walking toward the street to G.P.'s property without anyone else visible in the footage. Given this testimony, a rational fact-finder could have found beyond a reasonable doubt that a reasonable person in Worthington's circumstances would not have perceived the use of force in self-defense as necessary. Therefore, the State presented ample evidence to establish beyond a reasonable doubt that Worthington did not subjectively believe the use of force was necessary to defend himself and also that a reasonable person in the circumstance would not have objectively believed the use of force was necessary.

Worthington alleges that the district court applied the wrong standard in denying his motion for judgment notwithstanding the verdict but fails to show how that impacts

11

this court's analysis. Even assuming the district court misstated the standard of review, this court independently evaluates the evidence to determine whether the State met its burden. That the district court stated it might have reached a different conclusion than the jury is also irrelevant to the analysis governing the sole issue Worthington presents in this appeal. The only question for this court is whether the State presented sufficient evidence upon which a rational fact-finder could have found beyond a reasonable doubt that Worthington did not act in self-defense. The State met that burden.

CONCLUSION

Based upon the evidence presented at trial, the jury rejected Worthington's self-defense claim and found him guilty of misdemeanor battery beyond a reasonable doubt. This court's review of the record reveals that the State presented sufficient evidence on which a rational fact-finder could have found beyond a reasonable doubt that Worthington did not act in self-defense. Accordingly, Worthington's conviction of misdemeanor battery was supported by sufficient evidence presented at trial, and it is therefore affirmed.

Affirmed.